### Southern Coal & Coke Co. v. Bracht et al.
(Decided Feb. 5, 1937.)

124

C. C. ADAMS for appellant.

F. A. HARRISON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

O. B. Bracht owned and managed a considerable amount of farming lands in Grant county, Ky. Besides growing crops, he also fed and fattened cattle and other domestic food animals for the market. He likewise engaged in various trading enterprises and was consid-

ered a prosperous and more or less wealthy man. Misfortune overtook him and he became considerably embarrassed financially at least following the depression throughout the country commencing in 1929. He had been appointed guardian for a nephew and two nieces, the children of the appellee Lena A. Steers, who was the widow of John Steers. There came into his hands as assets of his wards a considerable sum of money, as much as or perhaps more than $7,000 to each of them. The appellee Lena A. Steers was surety on his guardian's bond or bonds. Prior to August 8, 1931, one of his wards, his niece Mary Allen Steers, became of age and on that day the guardian executed a mortgage upon all of his personal property, and some of his land, to his niece and his sister (surety on his guardian's bond), to indemnify the latter against any loss she might sustain because of her suretyship, and to secure a note for $5,000 held by the niece of the mortgagor.

The personal property covered by that mortgage consisted mostly in cattle and other stock upon the various farms of the mortgagor, and upon farming tools and produce that had been grown and harvested from them—all of the latter having long since disappeared by being consumed in feeding it to the mortgaged live stock. All of the mortgaged personal property, including that involved in these actions or proceedings, continued to remain in the possession of O. B. Bracht, as so located on his respective farms, and was managed, used, and controlled by him in the same manner that it was theretofore and which continued up to and following the transactions hereinafter stated. But Mrs. Steers testified that some time in 1933 her brother "turned over" (putting it in her language) to her 45 head of grade cattle and about 33 head of Hereford cattle, the true meaning of which, as she later stated, was that on that day she executed a receipt to her brother stating that she had received that property from him in consequence of a sale to her of that which she receipted for. But there was no change of possession, and the stock so alleged to have been sold to and purchased by Mrs. Steers continued to remain in the possession of O. B. Bracht and was thereafter handled and disposed of by him in the same manner as he had theretofore done with reference to the same character of property.

On October 4, 1933, the appellant, Southern Coal & Coke Company, recovered a judgment against O. B. Bracht in the Grant circuit court for the sum of $1,066.57 and its costs. Execution was raised thereon and the sheriff to whom it was delivered for execution levied it on a lot of property in possession of the defendant in the judgment including all the personal property herein involved. Following the levy, the appellees Mrs. Steers, Fred Miller, and Mrs. Adah Bracht, wife of O. B. Bracht, executed their respective bonds to the appellant, plaintiff in the judgment, as is prescribed in section 645 of the Civil Code of Practice, and in which each of them claimed certain portions of the personal property levied on as their own and the title to which they claim to have acquired from appellant's debtor, O. B. Bracht. Later plaintiff made motion for judgments against the obligors in the bonds, pursuant to the provisions of section 648 of the Civil Code of Practice, and in response thereto the respective appellees asserted title to the particular property levied on as set out in their respective bonds; whereupon the court summoned a jury as prescribed in the latter section of the Code and tried the issues of ownership. At the close of the testimony, counsel for appellant moved for a peremptory instruction directing the jury to return a verdict against the claimants, but it was overruled with exceptions. The respective claimants made similar motions and the court sustained them with reference to the appellees and claimants Mrs. Bracht and Miller, as to a part of the property each of them claimed, but submitted to the jury the issue of ownership of the other property claimed by each of them, and as to all the property claimed by Mrs. Steers, and it returned verdicts in favor of each of the claimants, upon which judgment was rendered in their favor, resulting in releasing the levy as to the property so claimed by each of them. Appellant's motion for a new trial was overruled and it prosecutes this appeal.

We have already stated how Mrs. Steers claimed to acquire the title to the property she claimed, and we will now state the manner by which title was claimed to have been acquired by the other two appellees, Mrs. Bracht and Miller. The latter was not related to O. B. Bracht, but he was a partner in a great many of the business transactions in which Bracht was engaged, and

it also appears that they were great friends, Miller spending a large portion of his time at the home of Bracht. A part of the property levied on, and which he claimed, was a lot of saw logs which had been cut from one of the farms of Bracht and ricked on the back portion thereof from which the timber was cut and where it remained for some time. The logs were later hauled to defendant's residence and rericked near to it at which place they were when they were levied on by the sheriff. Miller claims that Bracht was indebted to him and that he agreed for Miller to take the logs and give credit for their value, but there does not satisfactorily appear that any value was fixed in that alleged agreement and the logs remained after being cut so long upon the farm of Bracht as to clearly indicate that Miller had either abandoned them, or was guilty of great neglect with reference thereto, or that there was no such transfer of title to him as he claimed. At any rate, there was no change of possession of the logs, and the evidence of Miller with reference thereto is so vague and indefinite as to be quite nonconvincing and insufficient, as we conclude, to sustain his alleged title to the logs.

The other property claimed by Miller was two brown mules, the title to which he acquired, according to his testimony, in this manner: Bracht was indebted to him and to secure it he had given him a mortgage on a farm tractor. Later Bracht traded the tractor with Miller's consent for the pair of mules, but there was never any mortgage executed on them. They continued in the possession of Bracht and were so possessed by him at the time they were levied on. No evidence of indebtedness was ever produced by Miller, nor was any alleged mortgage produced by him, nor was there any valuation put upon any of the property that he claims, so as to fix the amount of any credit that he might place on his alleged indebtedness and last but not least, his mortgage on the tractor, if he had one, did not follow and attached to the pair of mules for which the tractor was traded by Bracht.

Mrs. Bracht claimed title to the property she bonded in a very vague and mysterious manner. She claims to have reared a crippled mule colt which was the nucleus of her property by which she later acquired all of that which she now claims. Her husband became pos-

sessed of the stock and cattle that she claimed, and which the sheriff had levied on, by his own trading, but which the wife says was done by him as her agent, although the husband exclusively participated in its acquisition, as well as paid for it. Neither ·was there any written transfer of the property as is required by section 2128 of our Statutes with reference to assignment and transfer of personal property between husband and wife so as to affect the rights of third persons. Bracht did not testify in the case for any of the claimants, although he was not a disqualified witness for Mrs. Steers and Miller.

Section 1908 of our Statutes avoids any transaction whereby personal property is aliened (without change of possession) as against a purchaser or creditor without notice, unless the transaction is in writing and acknowledged and filed for record. In none of the transactions here involved was that Statute complied with, nor is it intimated anywhere in the record that appellant possessed any knowledge or any fact that would lead to such knowledge if inquiry had been prosecuted. Moreover, it could be demonstrated—if the testimony of each claimant (together with that of their witnesses) should be gone over in detail—that the effort here made by the three appellees is undoubtedly one to protect the debtor, O. B. Bracht, and to deprive his creditor (appellant) from appropriating his property to the payment of its judgment. But such rehearsal, with necessary comments on such testimony, would lengthen this opinion far beyond due bounds and would be of no service to any one—not even the litigants themselves—since they are familiar with the testimony. The legal propositions stated above are of universal application. The requirements so prescribed thereby were, as we have seen, not complied with and we are convinced that the court erred in not sustaining appellant's motion for a peremptory instruction for a finding as therein requested.

In addition to what we have said, it is also insisted by appellant that there is no showing by Mrs. Steers that the property she is now claiming is the same property that was mortgaged to her by her brother, or the same as that for which she executed her receipt to him, as above stated, and for that reason also her claim should be disallowed. There is considerable support

for that contention, but we will not enter into or dispose of it because our conclusion, as above expressed, renders it unnecessary.

The major part of appellees' brief is taken up with an insistence that there was no plea of fraud, or any of the defensive matters to which we have referred, and that in the absence of such pleading all of the evidence relied on by appellant was incompetent. That rule with reference to the necessity for proper pleading—not only as to the question of fraud, but with reference to any other contested issue—is of universal application generally speaking and must be adhered to by litigants, but it does not apply in summary special proceedings such as the sections of the Code, supra, provide for. The procedure in such cases is summary and is governed by sections 444—449 and 648 of the Civil Code of Practice and no special pleading is required other than such steps as. are herein set forth; and which practice was declared, approved and upheld by us in the cases of Borches v. Bellis, etc., 110 Ky. 620, 62 S. W. 486, 23 Ky. Law Rep. 37, and Butcher v. Corbin Hardware & Furniture Company, 244 Ky. 632, 51 S. W. (2d) 931. When the issues are raised in the manner pointed out in section 648 supra of the Civil Code of Practice, the claimant may introduce, without written pleadings, any evidence to establish his title to the property and his antagonist may introduce any evidence to defeat it. This contention of counsel, therefore, is without merit.

For the reasons stated, the judgments are reversed, with directions to set them aside and for proceedings consistent with this opinion.